UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 06-363 (JMR/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| DURRY JAMAL KENNEDY,<br>a/k/a Bop, | |
| Defendant. | |

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon Durry Jamal Kennedy's Motion to Suppress Evidence Obtained Through Illegal Search [Docket No. 19], and Motion to Suppress Statements [Docket No. 21]. Andrew Winter, Assistant United States Attorney, appeared on behalf of the United States of America; Craig Cascarano, Esq., appeared on behalf of the defendant, Durry Jamal Kennedy, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing on January 9, 2007, and testimony taken from Officer Timothy Pinonimei, it is recommended that the defendant's Motion to Suppress Evidence Obtained Through Illegal Search [Docket No. 19], and Motion to Suppress Statements [Docket No. 21] be **DENIED**.

I.      FACTUAL BACKGROUND

At the hearing on January 9, 2007, Gang Strike Force Officer Timothy Pinonimei testified that he spent the summer of 2006 working with a confidential informant, who

had identified defendant Durry Jamal Kennedy, also known as "Bop," as a drug trafficker. The informant told Officer Pinonimei that Bop could sell large amounts of narcotics, and that he had purchased narcotics from Bop in the past. During one conversation, Bop told the informant that he could sell him one pound of narcotics. On August 3, 2006, Officer Pinonimei worked with the informant on a buy-bust. The informant described Bop to Officer Pinonimei and the type of car Bop drove, which he said was a gold Oldsmobile with fancy rims. The informant called Bop on his cell phone and spoke with him about purchasing approximately one pound of cocaine. Officer Pinonimei listened to the phone call; however, the call was not recorded. The informant and Bop agreed to meet at a yellow house in St. Paul with an address of XXXXX Street. Prior to the meeting, the informant and the informant's vehicle were searched. Officer Ray Walton was assigned as an undercover agent to ride along with the informant.

Upon arrival at the XXXXX Street address in St. Paul, officers observed an Oldsmobile that matched the description of Bop's vehicle given to Officer Pinonimei by the informant. The vehicle was parked in the alley behind the house. Officer Walton remained in the informant's car and was instructed to give a minute-by-minute description of the transaction to Officer Pinonimei and the other officers via a neck device. According to Officer Walton, the informant approached the Oldsmobile in the alley, in which two individuals were sitting, and got into the car. Bop sat in the driver's seat, the informant was in the front passenger seat, and the third unidentified individual was sitting in the back. After all three were inside of the car, the car backed down the alley, turned and backed down XXXXX Street, and parked in front of the informant's car. The informant asked Bop if he had the drugs, and Bop indicated that he did. Officer

2

Walton was in contact with the informant by cell phone; Officer Walton asked the informant if there were drugs in the car and the informant affirmed that there were. The informant then got out of Bop's car and started to return to his car. Officer Walton relayed to other officers that drugs were in Bop's car and told the officers to move in. All of the officers were dressed in raid shirts. As the officers approached Bop's vehicle, Bop exited and ran. Officers yelled, "police, stop," but Bop did not stop. Officer Pinonimei stated that Bop was carrying a white plastic bag with red lettering on it as he ran away. Several officers chased Bop but were initially unable to catch him. Because Bop was not apprehended right away, a canine unit was called. Approximately one hour later, the dog found Bop hiding in the rafters of a garage, which was about two blocks away from his car. Officers searched his person and found nothing. In a garbage can across the alley from the garage where Bop was found, officers found almost a half-kilogram of cocaine inside a white bag with red lettering from a Target store. No fingerprints were recovered from the bag. The garbage can was otherwise empty.

After the drugs were recovered, Bop's vehicle was searched using the canine drug dog. Upon entry into the car, the dog did not alert to any drugs, but alerted to $1,000 in cash in the center console. Officer Pinonimei testified that the informant was not given any cash to give to Bop, and that the cash found in Bop's car was not government money to be used for the buy. Further, Officer Pinonimei testified that the cash was not tested for drugs but that the dog indicated that there were drugs on the cash.

After he was arrested, defendant was taken to the Ramsey County jail, where he was advised of his Miranda rights. Defendant then gave a statement.

Defendant now moves the Court to suppress both the bag and the contents of his vehicle, which were seized as evidence. Defendant also moves the Court to suppress the statements he made after he was arrested.

## II. ANALYSIS

### A. Motion to Suppress Evidence

Defendant moves the Court to suppress the evidence that was seized as a result of the searches pendent to his arrest, contending that there was no probable cause to arrest him. There are two separate seizures at issue, the seizure of the bag of cocaine in the trash can in the alley, and the seizure of the contents of defendant's vehicle. The Court must first determine whether defendant's arrest was valid, and then will address each seizure of evidence separately.

1. Validity of Defendant's Arrest

Defendant argues that his arrest was unlawful and without probable cause. The Court finds that the seizure of defendant was lawful because it was supported by a probable cause that he had been or was engaging in criminal activity.

A warrantless arrest requires probable cause. See United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003). "'To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest.'" Id. (quoting United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003)). "We will find that probable cause existed at the time of arrest when the available facts and circumstances are sufficient to warrant a person of reasonable

4

caution to believe that an offense was being or had been committed by the person to be arrested. " Id. (citing same); see also United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (finding that probable cause "'exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.'") (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)). Law enforcement officers are not required to have enough evidence to justify a conviction before they make a warrantless arrest, however, a "bare suspicion of criminal activity" is not enough to establish probable cause. Id. (citing United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991)). Courts must give law enforcement officers "'substantial latitude in interpreting and drawing inferences from factual circumstances,' but such latitude is not without limits.'" Id. (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999), quoting United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997)).

This Court finds that based on the totality of circumstances there was probable cause to arrest defendant. First, based on the phone conversation between the informant and defendant, police knew it was likely that defendant would be in possession of the narcotics at the meeting. Second, Officer Pinonimei testified that during the buy-bust at the location arranged between defendant and the informant, the informant indicated that defendant had the drugs in his car. Third, as soon as the raid officers approached the car, defendant exited the car and ran away despite the officers'

5

order to stop.[1] Defendant then hid from police and was ultimately found in the rafters in a nearby garage. All of these facts taken together are more than sufficient to sustain the officers' belief that a crime had been or was being committed in their presence. The Court finds that defendant's arrest was valid.

 2. The Bag

Defendant argues that the bag containing drugs found in the garbage can was obtained through illegal search. The Government takes the position that no search or seizure implicating the 4th Amendment occurred regarding the bag since defendant abandoned it in the garbage can.

"The warrantless seizure of abandoned property does not violate the Fourth Amendment." United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citing Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960)). This is because when an individual voluntarily abandons property, they relinquish any expectation to privacy they might have had in the property. See Segars, 31 F.3d at 658 (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), cert. denied, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983)). In ascertaining whether property has been abandoned, this Court must look to the totality of circumstances available to law enforcement officers, including whether there was a verbal denial of ownership and physical relinquishment of the property. See United States v. Liu, 180 F.3d 957, 960

---

[1] "Although flight, standing alone, cannot satisfy probable cause, a defendant's attempt at flight contributes to the totality of the circumstances." See United States v. Hathaway, No. CR. 03-245 (JRT/FLN), 2004 WL 234399 at *4 (D. Minn. Jan. 23, 2004) (citations omitted); see also United States v. Slipka, 735 F.2d 1064, 1065 (8th Cir. 1984) (finding that flight from police coupled with a match in description of a bank robber provided sufficient probable cause for an arrest based on the totality of the circumstances) (quoting United States v. Everroad, 704 F.2d 403, 406 (8th Cir. 1983), quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

(8th Cir. 1999) (citing <u>United States v. Landry</u>, 154 F.3d 897, 899 (8th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999) (8th Cir. 1999); <u>see</u> also <u>Segars</u>, 31 F.3d at 658 ("An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done and other objective facts.'") (citations omitted).

Officer Pinonimei testified that defendant was seen carrying a white plastic bag with red lettering as he was pursued by police. After officers located defendant in the rafters of a garage and arrested him, the bag was discovered in a trash can across the alley from the garage where defendant was found. The bag was clearly not in defendant's possession at the time of his arrest; it was not on his person or within his reach. If the bag did not belong to defendant, then clearly he has no standing to challenge the search of the garbage can or seizure of the bag. In order to assert violation of Fourth Amendment rights against search and seizure, a party must be able to demonstrate a legitimate expectation of privacy in the area searched or items seized. <u>U.S. v. Green</u>, 275 F.3d 694, 698 (8th Cir. 2001). <u>See</u> <u>also</u> <u>United States v. Muhammad</u>, 58 F.3d 353, 355 (8th Cir. 1995) (finding that a defendant has burden of proving a legitimate expectation of privacy in the place or thing searched before defendant can challenge the search); <u>United States v. Gomez</u>, 16 F.3d 254, 256 (8th Cir. 1994) ("the defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched") (citation omitted); <u>United States v. Kiser</u>, 948 F.2d 418, 423 (8th Cir. 1991) (string citation omitted) (finding that a defendant "bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search and seizure"). Here, defendant could have no expectation of privacy in the garbage can, and if he did not own the bag, he cannot challenge its

7

seizure, as he has no possessory or privacy interest in it.  See Gomez, 16 F.3d at 256 (ownership, possession and/or control of the area searched or item seized is relevant to the analysis of whether a person has a legitimate expectation of privacy).

On the other hand, if the bag defendant was seen carrying as he fled the scene did indeed belong to him, he physically abandoned it when he put it in a garbage can. Further, the fact that defendant was being pursued by police does not render defendant's abandonment of the bag involuntary.  See Segars, 31 F.3d at 658 ("'The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.'") (quoting Jones, 707 F.2d at 1172).  The voluntary relinquishment of the bag by defendant leads this Court to the conclusion that he has no legitimate right of privacy to object to its seizure.  Therefore, defendant's motion to suppress the bag should be denied.

### 3. Contents of Vehicle

Defendant also objects to the seizure of the contents of his vehicle after his arrest, arguing that police had no probable cause to search the vehicle.

"The Fourth Amendment does not require that every search be made pursuant to a warrant.  It prohibits only unreasonable searches and seizures."  South Dakota v. Opperman, 428 U.S. 364, 372-73, 96 S. Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976) (citation omitted); see also United States v. Mays, 982 F.2d 319, 321 (8th Cir. 1993).  A warrantless search of an automobile may be allowed if there is probable cause.  See United States v. Rowland, 341 F.3d 774, 784 (8th Cir. 2003) (citing United States v. Riedesel, 987 F.2d 1383, 1389 (8th Cir. 1993); Carroll v. United States, 267 U.S. 132, 158-59, 45 S. Ct. 280 (1925)).  "Probable cause exists when, given the totality of the

circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

"'Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication.'" United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) (quoting United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993)). If such probable cause exists, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Id. (citing United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157 (1982)).

Having determined that there was probable cause to arrest defendant, this Court also finds, based on the investigation and surveillance of defendant, that the officers had probable cause to believe that there was evidence of a crime inside of the car. Defendant had arranged to make a large sale of drugs, and it appeared to the officers that he was conducting that sale from the inside of his car. The informant got into the car with defendant and indicated that defendant possessed the drugs in the car. Because there was a fair probability that evidence of a crime would be found in the car, the search of the vehicle and seizure of its contents was supported by probable cause.

For all of the reasons stated, this Court recommends defendant's motion to suppress evidence be denied.

**B. <u>Motion to Suppress Statements</u>**

Defendant also seeks to suppress the statements that he made after his arrest. Officer Pinonimei testified that defendant was given his <u>Miranda</u> rights, and that defendant signed a waiver of those rights before he was interviewed. Defendant's interview was recorded, and a copy of that recorded interview was admitted as Government Exhibit 1 at the hearing on January 9, 2007. The Court has listened to that interview in its entirety. At the beginning of the interview, defendant was clearly read his <u>Miranda</u> rights by one of the interviewing officers, and he indicated that he understood them. Defendant was also directed to initial a waiver of rights form as each right was read to him by the officer to show that he understood those rights. <u>See</u> Government Exhibit 2. The waiver is dated August 3, 2006, the date of defendant's arrest. It includes defendant's name, age, date of birth, address, employer, and level of education. Further, it includes the <u>Miranda</u> warning in a numbered paragraph form, with a blank next to each paragraph for an individual to initial after reading each statement. All four paragraphs are marked with the initials "DJK." At the bottom of the form, there is a short paragraph which reads "The above rights have been read to me. I have initialed each paragraph to show that I understand each of my rights. I have received a copy of this form." Below that paragraph is the signature of defendant, the signature of the supervising officer, and the date.

After the waiver was signed, officers began to interview defendant. The interview lasted approximately 15 minutes and 26 seconds, and stopped immediately upon defendant's request of an attorney.

Miranda v. Arizona requires that an individual be advised of his right to be free from compulsory self-incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Therefore, the protections afforded by Miranda are triggered when an individual "is both in custody and being interrogated." United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (citing United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied, 503 U.S. 1011 (1992)). A waiver of Miranda rights is valid if it satisfies the following criteria: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (citing United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994)).

As a preliminary matter, the Court notes that there is no dispute that defendant was in custody at the time the statements were made, and that he was therefore entitled to a reading of his Miranda rights.

The Court also finds that defendant voluntarily and knowingly waived his Miranda rights. "The determination of whether an accused has knowingly and voluntarily waived his Miranda rights depends on all the facts of each particular case." Stumes v. Solem, 752 F.2d 317, 320 (8th Cir. 1985) (citing Fare v. Michael C., 442 U.S. 707, 724-25, 99 S.Ct. 2560, 2571-72, 61 L.Ed.2d 197 (1979)). A waiver of Miranda rights is valid if it satisfies the following criteria: "First, the relinquishment of the right must have been

11

voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (citing United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994)) (citation omitted). Only if the "'totality of the circumstances surrounding the interrogation'" reveals both an uncoerced choice and the requisite level of comprehension may this Court properly conclude that the defendant's Miranda rights have been waived.  Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting Fare, 442 U.S. at 725, 99 S.Ct. at 2571).

     Here, there are no facts to indicate that defendant's waiver was not the product of free choice, and defendant has offered nothing to suggest that his Miranda rights were waived involuntarily, or that he was coerced into the waiver.  Defendant's interview was relatively brief, lasting just over fifteen minutes.  At no time during the interview did defendant indicate that he was uncomfortable or that he needed anything.  The interview stopped as soon as defendant indicated to the officers that he would like to speak with a lawyer.  The circumstances surrounding defendant's interview were not coercive or intimidating in any manner.  The waiver of rights form was initialed, signed and dated by defendant, indicating that he fully understood his rights before the interview began.  Having found that defendant's arrest was valid, and based upon the complete lack of evidence and argument to the contrary, the Court finds that defendant's Miranda rights were validly waived.  Therefore, defendant's motion to suppress statements should be denied.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Defendant Durry Jamal Kennedy's Motion to Suppress Evidence Obtained Through Illegal Search [Docket No. 19] be **DENIED**.

2. Defendant Durry Jamal Kennedy's Motion to Suppress Statements [Docket No. 21] be **DENIED**.

Dated:     February 2, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 20, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

13